## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JANNEY MONTGOMERY SCOTT LLC,** )
1717 Arch Street                                         )
Philadelphia, PA 19103                              )
                                                                    )
      Plaintiff,                                       )
                                                                    )
v.                                                                 )    Case No._____
                                                                    )
**LAURENCE BRAUNSTEIN,**                   )
20 West Palisades Avenue                         )
Apt. 2230                                                    )
Englewood, NJ 07631                               )
                                                                    )
and                                                              )
                                                                    )
**PARADIGM WEALTH MANAGEMENT** )
**LLC,**                                                         )
1140 Highway 22 East, Suite 103              )
Bridgewater, NJ 08807                             )
                                                                    )
Serve on:                                                     )
David Provinsal, Registered Agent            )
10 Wells Lane                                               )
Warren, NJ 07059                                     )
                                                                    )
      Defendants.                                   )

## VERIFIED COMPLAINT

Janney Montgomery Scott LLC ("Janney"), by its undersigned counsel, hereby files and asserts the following Complaint seeking injunctive relief and compensatory, statutory and punitive damages against Defendants Laurence Braunstein ("Braunstein") and Paradigm Wealth Management LLC ("Paradigm") (collectively, "Defendants").

## PRELIMINARY STATEMENT

1.     Braunstein is a former employee and registered representative of Janney. Braunstein breached two separate contracts with Janney, which were intended to safeguard

Janney's goodwill with its clients, its confidential information, and its competitive interests, misappropriated Janney's trade secrets and confidential business information, and violated his duty of loyalty and fiduciary duty.

2.      Paradigm has hired Braunstein knowing of his breaches and has aided and abetted those breaches and tortiously interfered with Braunstein's contracts with Janney.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4.      Venue is proper in this Court because Janney's principal place of business is in this district and because the cause of action arose here, and transactions and occurrences out of which it arose substantially took place here. Braunstein also agreed contractually to this venue for the claims against him.

## THE PARTIES

5.      Plaintiff Janney is a limited liability company organized and existing under the laws of the State of Delaware. Its headquarters is in Philadelphia, Pennsylvania, and it is qualified to do business in Pennsylvania.

6.      Braunstein is an individual and citizen of the state of New Jersey, residing at 20 West Palisade Avenue, Apt. 2230, Englewood, NJ 07631. He was employed by Janney as a financial advisor from 2015 through his resignation on September 13, 2019.

7.      Defendant Paradigm is, upon information and belief, a limited liability corporation organized and existing under the laws of the State of New Jersey.  Upon information and belief, Paradigm maintains an office location in this Commonwealth at 391 West Dublin Pike, Perkasie, PA.

2

## FACTUAL ALLEGATIONS

### A.  Janney's Background and Company Information

8.      With roots dating to 1832, Janney is a full-service financial services firm, providing comprehensive financial and investment advice and superior service to individual investors, families, corporations, and institutions. Janney is headquartered in Philadelphia but has over one hundred offices, including more than seventy locations in the eastern United States. Janney is a broker-dealer registered with the Financial Industry Regulatory Authority, Inc. ("FINRA"), a self-regulatory organization that oversees U.S. broker-dealers.

9.      Janney's business and reputation are based on the personal service that it provides to its clients. Accounts are obtained and maintained in great part through Janney's goodwill and reputation in the industry and the promise of exceptional customer service. A foundation of trust is built between the Janney representative and the client that is essential to the client's satisfaction and retention.

### B.  Braunstein's Employment with Janney

10.     On May 13, 2015, Braunstein became employed by Janney as a registered financial advisor in Janney's Midtown, New York City, branch. Braunstein joined Janney with his son, Jordan Braunstein, and the father and son became a "team" under the Janney Qualified Team Program.

11.     The Team Program is designed to provide enhanced services to clients and to encourage succession planning and cooperation rather than competition among financial advisors.  Under the Team Program, Braunstein and his son were marketed as a team, had access to each other's client information and client contacts, and shared knowledge, information and efforts to collectively service their accounts. They may receive a higher payout percentage

3

on assets under management than they otherwise would have if they were servicing their books of business alone.

12.     In January 2017, Alice Leopold ("Leopold") joined Braunstein and Jordan Braunstein to form a new team together, which they called "Lexington Avenue Wealth Management," under the Janney Qualified Team Program.

13.     On or about January 23, 2017, Leopold, Braunstein, and Jordan Braunstein signed a Janney Qualified Team Agreement ("Team Agreement"), which took effect on or about February 1, 2017. A true and correct copy of the Team Agreement is attached hereto as **Exhibit 1**.

14.     During his tenure with Janney, Braunstein was highly compensated for his work. He was paid based on a percentage of his gross earnings to the firm, and he received significant additional deferred compensation. His earnings since the time of his hire by Janney ranged from approximately $580,000 to more than $1 million.

15.     In April 2018, Braunstein filed for bankruptcy. At that time, he owed approximately $6.5 million to Morgan Stanley, his former employer, under a promissory note, and further owed Janney approximately $2.5 million under a promissory note, which was evidence of a loan made by Janney to Braunstein to assist him with transitioning from his former firm. Braunstein notified Janney of his intent to file for bankruptcy, but voluntarily committed to Janney that he intended to abide by his obligation to Janney under the promissory note and sought to enter into a new arrangement with Janney that would remain in place after his discharge in bankruptcy.

16.     In May 2018, Braunstein and Janney entered into a letter agreement (the "Letter Agreement") whereby Braunstein was offered the opportunity to continue his employment

4

under the terms contained in the Letter Agreement in lieu of termination. A true and correct

copy of the Letter Agreement is attached hereto as **Exhibit 2**. Braunstein agreed that his

commissions would be reduced from the standard commission grid by 10% through December

2024. Ex. 4, Letter Agreement, ¶ 2(b). If Braunstein remained employed with Janney through

December 2024, Janney would pay to Braunstein the differential between the commissions paid

under the Letter Agreement and the commissions he would have earned under the standard

commission grid. *Id.* The Letter Agreement also provided a schedule upon which Braunstein

would be liable for liquidated damages if he terminated his employment prior to December

2024. *Id.*, ¶ 4.

17.     The Letter Agreement also contained a provision whereby Braunstein agreed to

protect Janney's confidential information:

> All information learned or developed by you during the course of
> your employment with Janney will be deemed "Confidential
> Information." Examples of Confidential Information include, but are
> not limited to, customer data and customer lists, Janney's business
> plans and strategies, business operations and systems, information
> concerning employees, customers and/or management, trade secrets,
> policies and procedures, and all other information of any nature
> whatsoever which relate to the Firm's business, and includes
> information which the Company may have received from third
> parties. You agree that all such Confidential Information is
> confidential and proprietary to Janney, for the exclusive use of the
> Firm and employees who are discharging their responsibilities on
> behalf of Company. You agree that during your employment and at
> all times thereafter you will not disclose Confidential Information to
> any person or entity, at any time or in any way, except as directed
> by Janney and in order to conduct Janney's business. This provision
> does not prohibit or restrict you (or your attorney(s)) from initiating
> communications directly with or from responding to any inquiry, or
> providing testimony before the United States Securities and
> Exchange Commission, FINRA, or any other self-regulatory
> organization, or any other federal or state regulatory authority.
> Furthermore, you will not be held criminally or civilly liable under
> any federal or state trade secret law for disclosure of any trade secret
> that is made (a) in confidence to any federal, state or local
> government official, or counsel, for the purpose of reporting or
> investigating a suspected violation of law; (b) in a complaint or
> other document filed under seal in a lawsuit or other proceeding; or

> (c) to counsel in a lawsuit alleging retaliation for reporting a
> suspected violation of law and used in such court proceeding if such
> trade secret is filed under seal and not disclosed except pursuant to
> court order.

Ex. 2, Letter Agreement, ¶ 10.

18.     Finally, the Letter Agreement contained a non-solicitation provision whereby

Braunstein agreed that:

> During your employment with Janney, and for a period of one
> year after termination of your employment with Janney for any
> reason whatsoever, you will not, either directly or indirectly,
> solicit or induce any Client in an attempt to divert, transfer, or
> otherwise take away business or prospective business from
> Janney. This Agreement "not to solicit" means that you will not,
> either directly or indirectly, initiate any contact or communication
> with any Client for the purpose of soliciting, inviting,
> encouraging, recommending or requesting any Client to divert,
> transfer, or otherwise take away business or prospective business
> from Janney.

Ex. 2, Letter Agreement, ¶ 11.

19.     In June 2018, Jordan Braunstein left Janney. Braunstein and Leopold signed an

amendment to the Team Agreement removing Jordan Braunstein as a team member and

otherwise reaffirming all their obligations under the Team Agreement.  A true and correct copy

of the amendment is attached hereto as **Exhibit 3**.

20.     Despite his commitment to maintain his employment with Janney through 2024,

on Friday, September 13, 2019, Braunstein resigned without notice and informed Janney that he

was joining Paradigm effective immediately.

### C. **Braunstein's Team Agreement with and the Protocol for Broker Recruiting**

21.     The Team Agreement sets forth the terms and conditions under which the

individual financial advisors will act as a team, provides the team members with certain

benefits, and governs information and client accounts during the term of the Team Agreement

6

and upon termination of the Team Agreement.  As part of the Team Agreement, Braunstein

specifically acknowledged that in the course of his employment and the team relationship, he

would receive confidential information relating to client accounts, which was defined to

include:

> "Confidential Information" means all information regarding
> Clients' Accounts, including the Clients' names, addresses, phone
> numbers, e-mail addresses and other personally identifiable
> information, tax payer identification number, social security
> number, account number, trading practices and preferences,
> margin information, purchasing and marketing techniques, sales
> information, correspondence, records, financial information, past
> and present investments, and all other data and facts pertaining to
> the Client Account, and all compilations, lists or copies of such
> information.

Ex. 1, Team Agreement at ¶ 9 (the "Confidential Information"). The term "Client Accounts" is

defined to mean all the accounts serviced by the advisors on the team, and includes accounts

existing at the time of the Team Agreement and those who are brought to the firm thereafter.

Ex. 1, Team Agreement, ¶ 2.

22.     Braunstein  agreed  to  protect  Confidential  Information  from  disclosure.

Specifically, the Team Agreement provided:

> (1)  The Confidential Information constitutes valuable and trade
> secret property of the Firm in the development of which the Firm
> has expended significant time, money and effort, and shall remain
> the sole and exclusive property of the Firm;
>
> (2)  Team Members shall not, during the term of this Agreement
> or at any time thereafter, disclose, copy or use any of such
> Confidential Information except as required to perform their
> obligations arising from this Agreement and on behalf of the
> Firm, or as set forth in Paragraph 10 below. Should this provision
> be violated, the violating FA consents to injunctive relief as set
> forth in Paragraph 11 of this Agreement. . . .
>
> (3)  Upon departure from the Firm, each Team Member shall
> surrender to Janney management all Client Information within

7

his/her possession or control except as provided for at Paragraph 10 below.

Ex. 1, Team Agreement, ¶ 9.

23.     The Team Agreement provided that, under certain conditions, upon termination of employment a member of the team would be permitted to solicit clients that he or she had brought to the team, but also provided certain penalties for failure to abide by the provisions of the Team Agreement:

> A.  Protocol for Broker Recruiting. Should any Team Member(s) resign from Janney and immediately join another financial services firm, and where Janney and the other firm are signatories to the Protocol for Broker Recruiting ("Broker Protocol"), the resigning Team Member(s) must comply with all terms of the Broker Protocol in order to take "Client Information" as defined by the Broker Protocol and solicit accounts. A resigning Team Member may only take Client Information for those clients the departing Team Member listed on Schedule "A" as having been introduced to the Team by the departing Team Member(s). The departing Team Member(s) may not, regardless of the duration of the Team, take any Client Information for Client Accounts that the departing Team Member(s) did not introduce to the Team and list on Schedule A.

> B.  Non-Protocol departure. Should any Team Member(s) resign from Janney and immediately join another financial services firm which is not a signatory to the Broker Protocol, the resigning Team Member(s) must comply with all terms of the Broker Protocol as if the new Firm were a Broker Protocol member and otherwise comply with Paragraph A above. Failure to comply with all terms of the Broker Protocol and Paragraph A above will preclude the FA(s) from solicitation of Clients for a period of one year following termination of employment. Preclusion from solicitation means that the FAs will not, either directly or indirectly, initiate any contact or communication with any Client for the purpose of soliciting, inviting, encouraging, recommending or requesting any Client to move to the FA(s)' new Firm or to otherwise divert, transfer, or take away business or prospective business from Janney.

Ex. 1, Team Agreement at ¶ 10.

8

24.     The "Protocol" referenced in the Team Agreement is the "Protocol for Broker

Recruiting," which is a voluntary agreement among firms in the financial service industry to

govern the movement of registered representatives among firms. It was first signed in 2004 by

representatives of Citigroup, Merrill Lynch and UBS, and currently has more than 1,800

signatories.  By signing onto the Protocol, firms agree to permit registered representatives to

leave firms, take minimal confidential information regarding their former clients, comprising a

client list of names, addresses, email addresses, telephone numbers and account titles, and to

solicit their former clients so long as they comply with the provisions set forth in the Protocol.

A true and correct copy of the Protocol is attached hereto as **Exhibit 4**.

25.     Janney is a signatory to the Protocol. Paradigm is not. Despite that fact, because

the terms of the Team Agreement are so favorable to the representative, Braunstein's ability to

depart and continue to solicit clients under the Team Agreement would be the same as if

Paradigm were a signatory to the Broker Protocol, so long as he followed the Protocol during

his departure. However, if Braunstein violated the Protocol and the Team Agreement, the

penalty for that violation was that he would be unable to solicit *any* Janney client for a period of

one year following termination of employment.

26.     The Protocol provides that a departing representative may take *only* a client list

comprising the client name, address, phone number, email address, and account title of the

clients that he or she serviced while at the firm (the "Client Information"). Ex. 4, p. 1. The

representative is prohibited from taking any other documents or information.  Upon resignation,

the representative is to deliver to his former employer a list of clients he is taking with him.

Notably, the Protocol specifically provides that if a departing representative is a member of a

team, the terms of the team agreement will govern what information the representative may take

9

and which clients he or she may solicit, so long as the team agreement permits the representative to take information for clients he or she introduced to the team. If the list of clients is not accurate, the representative will not be penalized so long as the list was compiled in good faith and the representative substantially complied with the Protocol.

27.     The Team Agreement signed by Braunstein permitted him to take information and solicit clients that he introduced to the team and prohibited him from taking information or soliciting clients that other advisors introduced to the team. Ex. 1, Team Agreement, ¶ 10.B. The Team Agreement further requires Braunstein to comply with all terms of the Protocol upon his departure from Janney. Ex. 1, Team Agreement, ¶ 10.

### D. **Janney's Confidential Information**

28.     In the course of its business, Janney creates significant amounts of Confidential Information, as defined in the Letter Agreement and the Team Agreement.

29.     Janney carefully safeguards this Confidential Information, all of which is the subject of reasonable efforts by Janney to maintain its secrecy. Janney's Confidential Information derives independent economic value from not being generally known to, and not being readily accessible by proper means, to other persons outside of Janney, who, if they obtained access to it, could economically benefit from the Confidential Information's use and disclosure.

30.     Despite Janney's reasonable steps to protect its Confidential Information, Braunstein's theft, retention, and use of that Confidential Information on behalf of Paradigm presents an imminent threat of irreparable harm to Janney's legitimate business, its goodwill and advantageous business relationships with its current and potential customers.

10

31.     Based on information and belief, the value of the Confidential Information and trade secrets misappropriated by Braunstein, the unjust enrichment to him and to Paradigm as a result of Braunstein's unlawful conduct, and/or the economic injury already sustained and/or likely to be sustained by Janney as a result of Braunstein's unlawful conduct exceeds $75,000.

32.     To protect its Confidential Information, Janney has invested in its information security program by employing dedicated information security professionals and implementing an information security management system.  To ensure data is secure on user endpoints, servers and other electronic devices, Janney enforces Individual Accountability and Least Privilege, implementing a number of technical safeguards including encryption, anti-malware controls, Endpoint Protections including Device Control, web and mail content filtering controls, email phishing and malware protections, and multifactor authentication restricting access to authorized programs. Janney security standards are technically enforced globally to allocate specific privileges to each computer systems user and maintain the Confidentiality and Integrity of Janney data.

### E.  Braunstein's Theft of Confidential Information and Violations of the Protocol, the Letter Agreement, and the Team Agreement

33.     When Braunstein resigned on September 13, 2019, he provided Janney with a 36-page list of clients that he claimed was his "Protocol list."  While Braunstein was not permitted to take a client list or solicit *any* clients because of the non-solicitation provision contained in the Letter Agreement, even if Braunstein was following the Protocol, as he indicated, the list should have consisted *only* of the clients that Braunstein had prior to joining the team (legacy clients) and clients that he introduced to the team and had listed on Schedule A to the Team Agreement.  Instead, in clear violation of the Protocol and the Team Agreement, the list contains not only legacy clients and clients Braunstein introduced to the team, but also

11

appears to contain the names of ***every single client*** designated as a team client of Lexington Avenue Wealth Management, including many clients introduced to the team by Leopold and Charles Poggi, Jr., a junior financial advisor at Janney.

34. The very next business day, Monday September 16, 2019, before Janney had a chance to respond to Braunstein about his "Protocol list," Paradigm's Managing Partner, David Geigerich, sent an email or emails to, upon information and belief, many if not all clients on the Protocol list, announcing that Braunstein had joined Paradigm and soliciting each of the clients to continue working with Braunstein at Paradigm. Notably, this solicitation occurred before Braunstein was even registered with Paradigm and was therefore a violation of New Jersey securities law and the federal Advisers Act of 1940.

35. Not content with the single solicitation, Braunstein and Paradigm have continued to aggressively solicit not just the clients Braunstein had introduced to the team, but clients that clearly were brought to the team by Ms. Leopold, the remaining member, and Mr. Poggi. On September 17, 2019, Braunstein sent an email to Janney clients, personally soliciting those clients to move with him to Paradigm. These recipients included clients that Ms. Leopold and Mr. Poggi brought to the team.

36. By these actions, Braunstein has clearly violated the Letter Agreement and the Team Agreement and therefore should be precluded from soliciting all of Janney's clients, including Braunstein's legacy clients and those that he introduced to the team.

37. As a former registered representative of Janney, Braunstein is required to arbitrate the matters alleged in this case in a FINRA forum pursuant to FINRA Rule 13200 of the Code of Arbitration Procedure for Industry Disputes, as well as the Team Agreement. Ex. 1,

12

Agreement, ¶ 12.D. Pursuant to the Team Agreement, Janney has the right to seek injunctive or other equitable relief in this Court to enforce the terms of the Team Agreement. *Id.*

## COUNT I
## BREACH OF CONTRACT
### (Against Braunstein)

38.     Janney reasserts and realleges the allegations contained above and incorporates those allegations by reference as if set forth fully herein.

39.     The Letter Agreement and the Team Agreement are valid and enforceable contracts.

40.     The information and data taken by Braunstein constitutes protected "Confidential Information" as defined in the Letter Agreement and the Team Agreement and protected by the Protocol. This Confidential Information is unique, and its value to Janney is derived in large part, from its confidential nature.

41.     Janney promised in the Letter Agreement that he would not use for his own purposes or disclose to others any of Janney's Confidential Information.

42.     The Team Agreement requires Braunstein to comply with all terms of the Protocol upon his departure from Janney.

43.     The Team Agreement and Protocol required Braunstein to hold Janney's Confidential Information disclosed to him in trust for Janney and not to use said information or to disclose said information to outsiders, either during or after his employment.

44.     Braunstein further agreed in the Letter Agreement and in the Team Agreement (based upon his breach thereof) not to solicit any of Janney's clients for 12 months after the end of his employment.

45.     Braunstein's theft of the Confidential Information after termination of his employment with Janney, his subsequent failure to return that Confidential Information to Janney, and his continued retention and use of that Confidential Information to solicit Janney clients and to compete unfairly with Janney constitute direct and material breaches of the Letter Agreement and the Team Agreement.

46.     As a direct and proximate result of Braunstein's material breaches of his contractual obligations of confidentiality, Janney has suffered and, if Defendants are not temporarily restrained, will suffer severe economic loss and irreparable harm to its lawful business, its intellectual property, and its goodwill and advantageous business relations with its current and potential clients.

47.     There is no remedy at law that would be adequate to prevent the irreparable harm caused by Braunstein's material breach of contract.

48.     There is a strong likelihood that Janney will prevail on the merits of its claim of breach of contract against Braunstein.

49.     Janney's need for injunctive relief far outweighs any potential harm to Braunstein as a result thereof because Braunstein will simply be required to abide by the contractual obligations to which he agreed and is already bound.

50.     The public interest supports the enforcement of valid contractual rights and the protection of Janney's Confidential Information against the type of brazen misconduct demonstrated by Braunstein.

111427\000003\4831-6884-5990.v4

<u>COUNT II</u>
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016 ("DTSA") - 18 U.S.C. § 1836, *et seq*.
### (Against Both Defendants)

51.     Janney reasserts and realleges the allegations contained above and incorporates those allegations by reference as if set forth fully herein.

52.     Janney's Confidential Information identified above relates to products and services that are used in or intended for use in interstate commerce, within the meaning of the DTSA.

53.     Janney has taken reasonable measures to keep the Confidential Information secret.

54.     The Confidential Information derives independent economic value from not generally being known by others.

55.     Defendants are in possession of the trade secrets and Confidential Information without any color of right.

56.     As a result of Defendants' misappropriation of Janney's trade secrets and Confidential Information, Defendants have violated the DTSA.

57.     Pursuant to the DTSA, Janney is entitled to a preliminary and permanent injunction enjoining the Defendants from the continuing use and misappropriation of its trade secrets as described above.

58.     As a direct and proximate result of Defendants' violation of the DTSA, Janney has or will sustain significant damages.

59.     Pursuant to the DTSA, Janney is entitled to damages for the actual loss caused by the continuing misappropriation of its trade secrets and any damages for unjust enrichment caused by the continuing misappropriation of its trade secrets or, in lieu of damages measured

by other methods, the damages caused by the continuing misappropriation measured by an imposition of liability for a reasonable royalty of the misappropriators' unauthorized disclosure or use of the trade secret.

60.     Defendants' conduct in connection with the converting and misappropriating Janney's confidential proprietary and trade secret information for their own gain was willful, wanton, and malicious, and was taken with reckless disregard for the rights of the Janney, entitling Janney to an award of exemplary damages in an amount of not more than two times the amount of damages and entitling Janney to an award of attorneys' fees and costs.

61.     There is no remedy at law that would be adequate to prevent the irreparable harm caused by Defendants' violation of the DTSA.

## COUNT III
## BREACH OF THE DUTY OF LOYALTY AND
## FIDUCIARY DUTY
## (Against Braunstein)

62.     During his employments with Janney, Braunstein owed Janney a fiduciary duty of loyalty to act in utmost good faith for the exclusive interest of the company and to avoid conflicts of interest and self-dealing, and after termination not to disclose or use information to which he had been privy in a relationship of trust and confidence.

63.     At all times relevant, Braunstein was acting as a fiduciary of Janney with respect to maintaining the confidentiality of Janney's trade secrets and confidential and proprietary information.

64.     Braunstein, while an employee of Janney in a position of trust and confidence, conspired to steal Janney's trade secrets and confidential and proprietary information for the benefit of himself and Paradigm.

16

65.     Braunstein breached his fiduciary duties to Janney by stealing Janney's trade secrets and confidential information with the intent to use such information for the benefit of himself and/or Paradigm in competition with Janney.

66.     Upon information and belief, Braunstein (while employed and being compensated by Janney) directly and materially breached his fiduciary duties to Janney by, among other things, taking and using the Confidential Information in connection with his new role with Paradigm, in competition with Janney.

67.     Braunstein negligently or intentionally failed to act in good faith and solely for the benefit of Janney in all matters for which he was employed.

68.     As the direct and proximate result of Braunstein's breach of his duties of loyalty, Janney will suffer severe economic injury to its lawful business unless Defendant is enjoined from using Janney's Confidential Information to compete with it.

69.     Braunstein's failure to act solely for Janney's benefit was an actual factor in bringing about Janney's injuries.

## COUNT IV
## AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY AND FIDUCIARY DUTY
### (Against Paradigm)

70.     Janney reasserts and realleges the allegations contained above and incorporates those allegations by reference as if set forth fully herein.

71.     As an employee of Janney, Braunstein owed Janney fiduciary duties, including, but not limited to, the duty of loyalty and the duty to not misappropriate confidential information.

72.     Janney breached their fiduciary duties by disclosing and improperly utilizing Janney's trade secrets, confidential, and proprietary information for his new employer's benefit.

17

73.     Paradigm had actual knowledge of the breaches of fiduciary duties by Braunstein.

74.     Paradigm actively assisted Braunstein in his breach of fiduciary duty.

75.     Paradigm had actual knowledge that its assistance to Braunstein would contribute to the breaches of fiduciary duties committed by Braunstein.

76.     Braunstein would not have breached his fiduciary obligations had he not sought and been offered employment with Paradigm and misappropriated January trade secrets, confidential and proprietary information for the purpose of helping Paradigm with its business

77.     As a direct and proximate result of Paradigm's tortious aiding and abetting of Braunstein's wrongful conduct, Janney will suffer significant damages if Paradigm is not enjoined from using Janney's confidential information to compete with it.

## COUNT V
### TORTIOUS INTERFERENCE WITH CONTRACTS
### (Against Paradigm)

78.     Janney reasserts and realleges the allegations contained above and incorporates those allegations by reference as if set forth fully herein.

79.     Braunstein entered into the Letter Agreement and the Team Agreement with Janney, and thereby contractually agreed to protect Janney's Confidential Information, and not to solicit Janney clients.

80.     Upon information and belief, Paradigm was aware or should have been aware of the contractual relationship between Janney and Braunstein and the restrictions contained in the Agreement and the Letter Agreement.

81.     Paradigm nevertheless induced Braunstein to not perform his obligations under the Letter Agreement and the Team Agreement and did so tortiously and without justification.

18

82.     In engaging in the aforesaid conduct, Paradigm acted with actual malice, as the conduct was characterized by evil motive, intent to injure, ill will, and fraud.

83.     As a direct result of these tortious actions, Janney has suffered damages.

### COUNT VI
### COMMON LAW MISAPPROPRIATION OF TRADE SECRETS
### (Against Both Defendants)

84.     Janney reasserts and realleges the allegations contained above and incorporates those allegations by reference as if set forth fully herein.

85.     Any information that in any way concerns the activities, business or affairs of Janney or any of its clients, including, but not limited to, all client contact information, client account information, client investment objectives, history, and other private investment information, constitutes trade secrets, confidential, and proprietary information.

86.     Janney has created and assembled confidential files and databases containing substantial amounts of information concerning its Confidential Information, as defined in the Letter Agreement and the Team Agreement.  Janney relies on the Confidential Information as a core part of its business.  Such information would be of substantial value to business rivals of Janney in competing with it for work, as Defendants recognized it would be for Janney's business rival, Paradigm, and as confirmed by their unlawful taking, retention, and use of it. Use and disclosure of Janney's trade secrets will irreparably harm Janney and destroy its trade secrets.

87.     Janney has taken adequate and reasonable steps to protect and maintain the confidentiality of trade secrets, confidential, and proprietary information through entering into confidentiality agreements with its employees, including Braunstein, and safeguarding such information with computer passwords and other security measures.

19

88. Defendants, upon information and belief, jointly planned to copy, take, disclose and improperly utilize Janney's trade secrets and confidential and proprietary information for the benefit of themselves in competition with Janney, and upon information and belief, Defendants did copy, take, disclose and improperly utilize such information.

89. Defendants conspired with each other, and upon information and belief aided, abetted, acquiesced to and ratified their misconduct for the benefit of themselves.

90. As a direct and proximate result, Janney has and will continue to suffer irreparable harm and has also suffered damages.

91. Defendants' conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Janney.

## COUNT VII
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT - 12 Pa. C.S.A. § 5302, *et seq.*
### (Against Both Defendants)

92. Janney reasserts and realleges the allegations contained above and incorporates those allegations by reference as if set forth fully herein.

93. Any information that in any way concerns the activities, business or affairs of Janney or any of its clients, including, but not limited to, all client contact information, client account information, client investment objectives, history, and other private investment information, constitutes trade secrets, confidential, and proprietary information.

94. Janney has created and assembled confidential files and databases containing substantial amounts of information concerning its Confidential Information, as defined in the Letter Agreement and the Team Agreement. Janney relies on the Confidential Information as a core part of its business. Such information would be of substantial value to business rivals of Janney in competing with it for work, as Defendants recognized it would be for their business

20

rival, Paradigm, and as confirmed by their unlawful taking, retention, and use of it. Use and disclosure of Janney's trade secrets will irreparably harm Janney and destroy its trade secrets.

95.     Janney's confidential, and proprietary information were recognized as trade secrets in Braunstein's Agreements with Janney.

96.     Janney's trade secrets, confidential, and proprietary information are known only to its employees and is sufficiently secret such that it has economic value.

97.     Braunstein possessed Janney's trade secrets pursuant to a relationship that under the circumstances gives rise to a duty to maintain their secrecy and that limited their use.

98.     Braunstein knew that Janney endeavors to maintain the secrecy of its proprietary information.

99.     Janney has taken adequate and reasonable steps to protect and maintain the confidentiality of trade secrets, confidential, and proprietary information through entering into confidentiality agreements with its employees, including Braunstein, and safeguarding such information with computer passwords and other security measures.

100.    Upon information and belief, Braunstein has sent or caused to be sent outside of Janney, trade secrets and proprietary and commercially sensitive information, and intend to use and disclose it in his new role with Paradigm.

101.    Defendants' acquisition and subsequent use of Janney's confidential information and trade secrets is a misappropriation and continuing misappropriation of Janney's confidential information and trade secrets in violation of the Pennsylvania Uniform Trades Secrets Act 12 Pa.C.S. § 5301, et seq.

102.    Defendants are aware that they do not have Janney's consent to misappropriate and use said trade secrets.

21

103.    Upon information and belief, without Janney's trade secrets, confidential, and proprietary information, Braunstein would be unable to adequately perform the essential job functions in his new role with Paradigm.

104.    Defendants' continued use of Janney's trade secret information is unlawful, and Janney has or will be significantly damaged.

105.    Defendants' misappropriation of Janney's trade secrets, confidential, and proprietary information was a willful and malicious misappropriation entitling Janney to an award of exemplary damages in an amount not to exceed twice the amount of actual damages and attorneys' fees and costs pursuant to the Pennsylvania Uniform Trades Secrets Act 12 Pa.C.S. §§ 5304 and 5305.

### COUNT VIII
### PRELIMINARY AND PERMANENT INJUNCTION UNDER FRCP 65
### (Against Both Defendants)

106.    Janney incorporates by reference the allegations set forth more fully above.

107.    By reason of Defendants' conduct, as more fully set forth herein, Janney is suffering, and continues to suffer incalculable financial loss and great and irreparable injury to its business and property for which it has no adequate remedy at law.

108.    Unless Defendants are immediately restrained from doing so, Defendants will continue their conduct in using Janney's trade secrets, confidential, and proprietary information for the benefit of Defendants and to the detriment of Janney by competing with Janney and using Janney's own information to solicit Janney's customers and potential customers.

109.    By virtue of the foregoing, Janney has demonstrated the likelihood of success on the merits of this claim and that a balancing of the equities favors the issuance of a temporary restraining order, preliminary injunction, and permanent injunction against Defendants.

22

110.    Upon information and belief, unless Defendants are enjoined, Janney will be irreparably harmed by, among other things, the following:

a.    Defendants' disclosure of trade secrets, confidential, and proprietary information which is solely the property of Janney;

b.    Loss of confidentiality of client lists, loss of confidence and trust of clients, loss of goodwill and business reputation;

c.    Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable; and

d.    Other acts of Defendants, all for which there is no adequate remedy at law.

**WHEREFORE**, Janney requests the following relief:

(a)    Defendants be enjoined from using, retaining  or disclosing any of Janney's trade secrets or confidential information;

(b)    Braunstein be enjoined from breaching the obligations in the Letter Agreement and the Team Agreement;

(c)    Defendants be enjoined immediately to return to Janney all company property, as well as all copies of Janney's documents, electronic files, and information;

(d)    Defendants be enjoined from soliciting Janney's clients for a period of 12 months;

(e)    Defendants be enjoined from rendering any services to any client of Janney that was solicited in violation of Defendants' contractual and legal duties to Janney;

(f)    Janney be awarded actual, compensatory, and punitive damages;

(g)    Janney be awarded exemplary damages as allowed by the DTSA;

(h)    Defendants be ordered to disgorge all profits realized by them in violation of their duties to Janney;

(i)    Janney be awarded its reasonable costs and attorneys' fees incurred in this action; and

(j)    Janney be awarded such other relief as the Court deems just.

Date: September 19, 2019

Respectfully Submitted,

Suzzanne W. Decker (PA Fed. Bar # 324018)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
410-385-3715 (t)
410-385-3700 (f)
sdecker@milesstockbridge.com

*Attorneys for Plaintiff,*
*Janney Montgomery Scott, LLC*

*Of Counsel:*
Kirsten M. Eriksson, Esquire (*pro hac vice forthcoming*)
Dana S. Gloor, Esquire
Megan B. Burnett, Esquire
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
410-727-6464 (t)
410-385-3700 (f)

24

## **VERIFICATION**

I, Jill B. Clarke, as Vice President and Associate General Counsel of Janney Montgomery Scott, LLC, do hereby verify, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct based on my knowledge and belief.

Janney Montgomery Scott, LLC

Dated: September 19, 2019           By: _____

Jill B. Clarke
Vice President and Associate General Counsel

25